**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MICAH RENE HEWITT** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 22-461** |
| **W&T OFFSHORE, INC.** | **SECTION: "G"(1)** |

## ORDER AND REASONS

Before the Court is Defendant W&T Offshore, Inc.'s ("Defendant") "Motion for Summary Judgment."[1]  In this litigation, Plaintiff Micah Rene Hewitt ("Plaintiff") alleges that Defendant is liable for personal injuries he sustained working aboard Defendant's oil platform.[2]  Plaintiff brings claims under the Outer Continental Shelf Lands Act (the "OCSLA"),[3] the Longshore & Harbor Workers' Compensation Act (the "LHWCA"),[4] and for negligence under maritime and state law.[5] In the instant motion, Defendant argues that Plaintiff's claims are barred due to his status as a "borrowed employee."[6]  Plaintiff opposes the motion.[7]  Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court denies the motion.

---

[1] Rec. Doc. 12.

[2] Rec. Doc. 1 at 1.

[3] 43 U.S.C. § 1331.

[4] 33 U.S.C. § 901.

[5] Rec. Doc. 1 at 2, 4 –6.

[6] Rec. Doc. 12 at 1.

[7] Rec. Doc. 16.

# I. Background

*A.*    ***Factual Background***

This litigation arises out of injuries Plaintiff allegedly sustained on May 8, 2021, while working onboard the Main Pass 283, a deep-water oil and gas production platform ("MP 283").[8] MP 283 is owned and operated by Defendant.[9] Plaintiff was employed by Pelstar Mechanical Services, LLC ("Pelstar").[10] Pelstar was contracted to perform services for Defendant.[11] Pelstar provided Plaintiff to Defendant as a "fill in" mechanic to replace Defendant's regular mechanic on MP 283, Ray Neslony, who performed preventative and routine maintenance rounds, addressed any issues with equipment, and "would assist with general labor tasks," after Neslony took temporary leave.[12] Plaintiff began working on MP 283 approximately four days prior to the date of his alleged injury.[13] Plaintiff alleges that he was injured when one of Defendant's employees, while attempting to load a crate into a "grocery box" by maneuvering it on a dolly, allowed the crate to slide off the dolly and smash Plaintiff's right foot. Plaintiff asserts that the employee "negligently handled the large crate" and that Defendant is liable for its failure to intervene, oversee operations, and provide adequate training, proper equipment, proper inspections, and a

---

[8] Rec. Doc. 1 at 2.

[9] *Id.* at 3.

[10] *Id.*

[11] *Id.*

[12] Rec. Doc. 12-2 at 1–2 (Defendant's Statement of Uncontested Facts). The facts referenced are admitted by Plaintiff. *See* Rec. Doc. 16-1 at 1.

[13] *See* Rec. Doc. 12-2 at 3.

competent crew, amongst other allegations.[14] Plaintiff claims damages based on loss of earnings, medical expenses, pain and suffering, and mental anguish.[15]

### B.    *Procedural Background*

Plaintiff filed a Complaint in this Court on February 22, 2022, bringing claims against Defendant under the OCSLA, the LHWCA, general maritime law, and Louisiana law.[16]

On October 25, 2022, StarStone National Insurance Co. ("StarStone") filed an "Unopposed Motion for Leave to File Complaint of Intervention."[17] On October 26, 2022, the Court granted StarStone leave to intervene in this matter because it paid over $82,000 in workers compensation benefits to Plaintiff due to the incident at issue.[18] Accordingly, that same day Starstone filed an Intervenor Complaint.[19]

On January 18, 2023, Defendant filed the instant Motion for Summary Judgment.[20] On January 31, 2023, Plaintiff filed an opposition to the motion.[21] On February 8, 2023, with leave

---

[14] Rec. Doc. 1 at 3.

[15] *Id*. at 7.

[16] *Id.* at 2, 4–6.

[17] Rec. Doc. 8.

[18] Rec. Doc. 9.

[19] Rec. Doc. 10.

[20] Rec. Doc. 12.

[21] Rec. Doc. 16.

of Court, Defendant filed a reply brief in further support of the motion.[22] On February 10, 2023, with leave of Court, Plaintiff filed a sur-reply brief in further opposition to the motion.[23]

## II. Parties' Arguments

### A.   *Defendant's Arguments in Support of the Motion for Summary Judgment*

In the instant motion, Defendant argues that Plaintiff was a borrowed employee at the time of his alleged injury and therefore has no tort remedy against Defendant such his Complaint should be dismissed.[24] Defendant argues that "[i]t is undisputed that [Plaintiff] was a covered worker under the LHWCA because at the time of his alleged injury, he was working for [Defendant] as a fill-in mechanic on [] MP 283."[25] Defendant asserts that worker's compensation and medical payments are the sole remedy for an employee covered by the LHWCA when filing suit against an employer.[26] Defendant further asserts that this rule applies to an LHWCA-covered injured worker who qualifies as a borrowed employee when filing suit against a borrowing employer such that the borrowing employer has no tort liability.[27]

Defendants allege that Plaintiff is a borrowed employee based on the nine factors enumerated by the Fifth Circuit in *Ruiz v. Shell Oil*:[28]

(1) Who had control over the employee and the work he was performing, beyond mere

---

[22] Rec. Doc. 19.

[23] Rec. Doc. 22.

[24] Rec. Doc. 12 at 1.

[25] Rec. Doc. 12-1 at 10.

[26] *Id.*

[27] *Id.*

[28] 413 F.2d 310 (5th Cir. 1969).

suggestion of details or cooperation?

(2) Whose work was being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished the tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee?[29]

Defendant argues that every factor except the seventh factor—whether the new employment was over a considerable length of time—weighs in favor of finding Plaintiff was a borrowed employee.[30] Defendant argues that the first factor—whether it exercised control over Plaintiff—weighs in favor of finding Plaintiff was a borrowed employee because Plaintiff only took work orders from Defendant's person-in-charge on MP 283, Johnnie Harvey ("Harvey"), who "completely dictated" Plaintiff's work.[31] Defendant further argues that it is undisputed that Harvey set Plaintiff's schedule and assignments on MP 283, over which Pelstar had no involvement.[32] Thus, Plaintiff concludes that this first factor, on which "courts place the most

---

[29] *Id.* at 11 (first citing *Ruiz*, 413 F.2d at 341; and then *Skipper v. A&M Dockside Repair, Inc.*, 430 F. Supp. 3d 170, 178 (E.D. La. 2020)).

[30] *Id.* at 12.

[31] *Id.* at 12–13.

[32] *Id.* at 13.

emphasis," weighs in favor of finding Plaintiff was a borrowed employee.[33]

Defendant argues that the second factor—whose work was being performed—weighs in favor of finding that Plaintiff was a borrowed employee because Plaintiff performed work only for Defendant on MP 283 during his time as its fill-in mechanic.[34]

Defendant argues that the third factor—whether there was an understanding between Defendant and Pelstar—weighs in favor of finding that Plaintiff was a borrowed employee because "[Defendant] and Pelstar understood that [Plaintiff] was being lent to MP 283 to perform the work of [Defendant] and follow [Defendant's] orders" and "Pelstar had absolutely no contact with [Plaintiff] once he arrived."[35] Defendant further asserts that, although it expects Plaintiff to argue that the independent contractor provision in Master Service Agreement between Defendant and Pelstar (the "MSA") "negates his borrowed servant status," such a conclusion would be contrary to Fifth Circuit precedent finding that "the 'reality at the worksite . . . can impliedly modify, alter or waive an express contract provision.'"[36] Thus, Defendant concludes that Defendant and Pelstar modified the independent contractor provision in the MSA through their understanding that Plaintiff "would be taking all instructions and orders from [Defendant] while he was on MP 283."[37]

Defendant argues that the fourth factor—whether Plaintiff acquiesced to his new work situation—weighs in favor of finding that Plaintiff was a borrowed employee because Plaintiff had

---

[33] *Id*. at 11, 13 (citing *Capps v. N.L. Baroid-NL Indus., Inc*., 784 F.2d 615, 617 (5th Cir.1986)).

[34] *Id*. at 13 (citing *Hotard v. Devon Energy Corp*., No. 17-1476, 2008 WL 2228922, at *4 (W.D. La. May 29, 2008)).

[35] *Id*.

[36] *Id*. at 14 (quoting *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1245 (5th Cir. 1988)).

[37] *Id*.

previously worked on other platforms owned by Defendant, was required to comply with Defendant's rules like all other employees, and never objected to or refused any work orders from Harvey or another employee of Defendant.[38]

Defendant argues that the fifth factor—whether Pelstar terminated its employer status with Plaintiff—weighs in favor of finding that Plaintiff was a borrowed employee because Plaintiff "had no contact with Pelstar and received all instruction from [Defendant] during the borrowing period."[39]

Defendant argues that the sixth factor—whether Defendant provided the tools and place for performance—weighs in favor of finding that Plaintiff was a borrowed employee because Defendant "furnished him with the place of performance, his transportation to the work site, and his food and lodging."[40]

Defendant "concedes that the seventh factor does not weigh in favor of borrowed servant status" but argues that it is neutral because Plaintiff was injured early in his assignment at MP 283.[41] However, Defendant argues that the eighth factor—whether Defendant had a right to discharge Plaintiff—weighs in favor of borrowed servant status because Defendant could terminate Plaintiff's position at MP 283, remove him from the platform and direct Pelstar to refrain

---

[38] *Id*. at 14–15.

[39] *Id*. at 16.

[40] *Id*.

[41] *Id*. at 18 (citing *Capps*, 784 F.2d at 618).

from assigning him to any future jobs with Defendant.[42]

Defendant contends that the ninth factor—whether Defendant had an obligation to pay Plaintiff—weighs in favor of borrowed servant status because, to be paid, Plaintiff was required to record his hours worked for Defendant, submit them for Defendant's approval, and then send his approved hours to Pelstar, which would then invoice Defendant based on those hours.[43] Thus, Defendant concludes that Plaintiff was a borrowed employee not entitled to any tort recovery.[44]

**B.** *Plaintiff's Arguments in Opposition to the Motion for Summary Judgment*

In response, Plaintiff argues that he should not be considered Defendant's borrowed employee and that, therefore, the motion for summary judgment should be denied.[45] Plaintiff asserts that "the balancing of all nine factors" and, specifically, "an examination of the control factor and the meeting of the minds factor" clearly supports this conclusion.[46] The Court summarizes Plaintiff's arguments regarding each factor in turn.

First, Plaintiff argues that the question of who controlled the employee "should be decided by the fact finder unless the other factors *overwhelmingly* support Plaintiff's borrowed employee status."[47] Plaintiff avers that he testified that "[Defendant] did not train him on how to perform his work and [Defendant] did not control his work," "he would determine if anything needed to be

---

[42] *Id*.

[43] *Id*. at 19.

[44] *Id*. at 20.

[45] Rec. Doc. 16 at 7.

[46] *Id*.

[47] *Id*. at 7–8 (citing *Robertson v. Blanchard Contractors, Inc.*, No. 11-1453, 2012 WL 6202988, at *11 (E.D. La. Dec. 12, 2012)).

fixed," and he never attended any daily meetings on what he should do that day.[48] Plaintiff contends that any meetings that did occur "would be informal and just go over any 'out of the norm' agenda items."[49] Plaintiff asserts that he "did not require instructions from [Defendant] on how to perform [his] discrete job as a mechanic," was only instructed by Pelstar to go to MP 283, and "understood his job prior to traveling to [the platform]."[50] Plaintiff further asserts that, although he cooperated with other employees for "the overall function of the platform," any work he conducted was done "independently."[51] Thus, Plaintiff concludes that this first factor "lies in favor against borrowed employee status."[52]

Second, Plaintiff argues that "[i]t is unopposed that the work performed by [him] was for the service of [MP 283]" and Defendant.[53] Plaintiff asserts that the MSA clearly lays out that Plaintiff was an independent contract performing work integral to Defendant's operations and that Pelstar is responsible for workers compensation benefits.[54]

Third, Plaintiff argues that Defendant failed to support its assertion that the independent contractor provision of the MSA was modified because it provides no evidence as to Pelstar's intent and presumably relies on the unsworn declaration of Henry Leger ("Leger"), who was not

---

[48] *Id*. at 8 (citing Rec. Doc. 16-5 at 62–63, 81, 154–55, 159).

[49] *Id*. (citing Rec. Doc. 16-5 at 66).

[50] *Id*. (citing Rec. Doc. 16-5 at 66, 81).

[51] *Id*. at 8–9 (citing Rec. Doc. 16-5 at 66–69).

[52] *Id*. at 9.

[53] *Id*.

[54] *Id*. (citing Rec. Doc. 16-2).

authorized to make any statements on behalf of Pelstar.[55]  Plaintiff further argues that "Pelstar has in fact satisfied [Plaintiff's] worker compensation benefits under [the] LHWCA," demonstrating that Pelstar did not intend to modify the provision.[56]  Thus, Plaintiff concludes that the evidence suggests that there was an agreement or understanding between Defendant and Pelstar that weighs against Plaintiff's borrowed employee status.[57]

Fourth, Plaintiff argues that there is no evidence as to whether he acquiesced to his new work situation after observing the conditions.[58]  Thus, Plaintiff concludes that this fourth factor is neutral.[59]

Fifth, Plaintiff argues that he took the assignment on MP 283 at Pelstar's direction and remained under their charge.[60]  Plaintiff avers that Defendant also testified that Plaintiff "did not work directly for [Defendant]."[61]  Thus, Plaintiff concludes that "a genuine issue of material fact exists on the degree and understanding of Pelstar's continued relationship with [Plaintiff] while in service of [MP 283]."[62]

---

[55] *Id*. at 9–10 (citing Rec. Doc. 12-4).

[56] *Id*. at 10 (citing Rec. Doc. 16-3).

[57] *Id*.

[58] *Id*. at 11.

[59] *Id*.

[60] *Id*. (citing Rec. Doc. 16-5 at 33, 156, 158–59).

[61] *Id*. (citing Rec. Doc. 16-4 at 48–49).

[62] *Id*.

Sixth, Plaintiff argues that "he brought his own tools because sometimes mechanics are called out to platforms or places that don't have any tools."[63] However, Plaintiff acknowledges that Defendant provided his food, lodging, and transportation.[64] Thus, Plaintiff asserts that, given these "joint contributions" in furnishing the tools and place for performance, "this factor is neutral and ripe for a jury."[65]

Seventh, Plaintiff argues that the length of his employment with Defendant—four days "of a short fourteen-day assignment"—weighs against his borrowed employee status.[66] Plaintiff asserts that Defendant concedes that this factor weighs in Plaintiff's favor.[67]

Eighth, Plaintiff argues that Defendant did not necessarily have the right to terminate Plaintiff's employment even if it could remove him from its platform.[68] Plaintiff asserts that Defendant stated it "has the authority to remove anyone off of the platform 'whether it's one of our guys or somebody else.'"[69] Thus, Plaintiff contends that "[t]his removal of personnel from the platform clearly is a safety measure, not [a reflection of] employee status."[70] Further, regarding Defendant's argument that it could have asked Pelstar not to provide Plaintiff for future service jobs, Plaintiff avers that Defendant has admitted "it could request this regarding any services

---

[63] *Id*. at 12 (citing Rec. Doc. 16-5 at 54–55).

[64] *Id*.

[65] *Id*.

[66] *Id*. (citing Rec. Doc. 16-5 at 155).

[67] *Id*.

[68] *See id*. at 13.

[69] *Id*. (quoting Rec. Doc. 16-4 at 46–47).

[70] *Id*.

rendered on any of its platforms."[71]  Plaintiff contends that he understood only Pelstar as having the authority to terminate his employment even if Defendant could remove him from the platform.[72]  Therefore, Plaintiff concludes that there is a genuine issue of material fact as to whether Defendant could terminate his employment.[73]

Ninth, Plaintiff argues that Pelstar would have paid him for his work regardless of whether Defendant disputed payments.[74]  Plaintiff further argues that Defendant admits to never paying Plaintiff directly nor providing him any benefits.[75]  Plaintiff avers that the MSA also stipulates that "the payment of services is the obligation of the Contractor party, Pelstar."[76]  Thus, Plaintiff concludes that "it is clear from the deposition testimonies and the provisions of the MS[A] that Pelstar ultimately has the obligation to pay Plaintiff" to weigh against his borrowed employee status.[77]

Weighing the nine factors, Plaintiff concludes that Defendant has failed to overcome "the express, clear, and unambiguous provisions" in the MSA, even though the Fifth Circuit has found that a meeting of the minds is "one of the most important factors" in the borrowed employee analysis.[78]  Plaintiff avers that Defendant bases its arguments regarding Pelstar's intentions on an

---

[71]  *Id*. (citing Rec. Doc. 16-4 at 47).

[72]  *Id*. (citing Rec. Doc. 16-5 at 164–65).

[73]  *Id*. at 14.

[74]  *Id*. (citing Rec. Doc. 16-5 at 166).

[75]  *Id*. (citing Rec. Doc. 16-4 at 27).

[76]  *Id*. at 15 (citing Rec. Doc. 16-2).

[77]  *Id*.

[78]  *Id*.

unsworn declaration of an employee not shown to have the authority to speak on its behalf.[79]
Further, Plaintiff avers that he controlled his work on the platform as the mechanic and was only
instructed by Defendant on safety, not on how to perform his mechanical duties.[80]   Thus,
Plaintiff concludes that the instant motion should be denied.

## C.  *Defendant's Arguments in Further Support of the Motion for Summary Judgment*

In reply, Defendant addresses the seven *Ruiz* factors that Plaintiff argues weigh against his
borrowed employee status.[81]  As to the first factor, Defendant argues that Plaintiff relies on
"objected-to questioning posed during [Plaintiff]'s deposition by his own counsel in which he gave
conclusory answers that are not supported by a shred of admissible evidence and are contradicted
by the testimony and declarations of every other fact witness."[82]  Defendant asserts that Plaintiff's
statements are contradicted by Leger, who stated that Defendant "completely controlled, directed,
and supervised [Plaintiff's] work."[83]  Regardless, Defendant avers that courts within the Fifth
Circuit have rejected the argument that "workers 'who require little supervision cannot be
considered borrowed servants.'"[84]  Defendant argues that, as in *Hotard v. Devon Energy
Corporation, L.P.*, where the trial court concluded that this factor supported borrowed employee

---

[79] *Id.*

[80] *Id.*

[81] *See* Rec. Doc. 19.

[82] *Id.* at 6.

[83] *Id.* (citing Rec. Doc. 12-4).

[84] *Id.* at 6–7 (citing *Bourgeois v. W & T Offshore, Inc.,* No. 13-294, 2013 WL 4501326, at *3 (E.D. La. Aug. 21, 2013)).

status under "strikingly similar" facts, the Court should find that Defendant had control over Plaintiff's work.[85]

As to the third factor, Defendant argues Leger's declaration "establishes Pelstar's understanding that all of [Plaintiff's] instruction on MP 283 would be provided by [Defendant] . . . irrespective of the independent contractor provision in the MS[A]."[86] Defendant asserts that the MSA actually contemplates the "situation where Pelstar's employees act as borrowed [employees] of [Defendant]," as when Plaintiff was assigned to MP 283.[87] Defendant contends that Pelstar's payment under the LHWCA does not foreclose Plaintiff's borrowed employee status under Fifth Circuit precedent and was consistent with the MSA's requirement that Pelstar provide insurance to cover Defendant's liability under the LHWCA as a borrowing employer.[88] Defendant also avers that Plaintiff's assertion regarding Leger's declaration about the nature of Plaintiff's assignment to MP 283 is unsupported by evidence.[89] Defendant asserts that Leger "is a Pelstar service manager and he personally handled [Plaintiff's] assignment to MP 283" such that "[h]e can certainly speak to the factual circumstances of [Plaintiff's] assignment."[90] Defendant further asserts that "[t]he reliability of the Leger declaration is further corroborated by the fact [Defendant]

---

[85] *Id* at 7 (citing *Hotard*, 2008 WL 2228922, at *1).

[86] *Id*. at 4.

[87] *Id*.

[88] *See id*. at 4–5 (citing *Wood v. Meridian Oil Prod. Inc.*, 199 F.3d 437 n.2 (5th Cir. 1999)).

[89] *Id*. at 5.

[90] *Id*. (citing *Bourgeois,* 2013 WL 4501326, at *3).

also understood that [Plaintiff] would be a borrowed [employee] on MP 283 and subject to [Defendant's] supervision."[91]  Defendant reasserts its arguments as to the remaining factors.[92]

### D.      Plaintiff's Arguments in Further Opposition to the Motion for Summary Judgment

In the sur-reply brief, Plaintiff brings to the Court's attention the February 7, 2023 deposition of Barney Lee Fischer, Jr. ("Fischer"), the sole witness to the alleged incident leading to Plaintiff's injuries.[93]  Plaintiff states that Fischer testified he was a contractor for Defendant, like Plaintiff, at the time of the incident and was subsequently hired by Defendant as an employee.[94]  Plaintiff further states that Fischer described Harvey's role on MP 283 "as one of safety" because he had the authority to remove personnel for safety but did not direct the work of contractors.[95]

As an exhibit to the sur-reply brief, Plaintiff attaches Defendant's report of the alleged incident at issue (the "Incident Report"),[96] Defendant's daily roster from the date of the alleged incident (the "Daily Roster"),[97] and Defendant's handbook for employees and contractors (the "Handbook").[98]   Plaintiff avers that Fischer "verified the information in the [Incident Report] and

---

[91]  *Id*. at 6 (citing Rec. Doc. 12-3).

[92]  *See id.* at 8–10.

[93]  Rec. Doc. 22 at 1. Plaintiff represents that the transcript of Fischer's deposition has not yet been prepared but Plaintiff attaches "the relevant exhibits" to the memorandum. *Id*. at 2.

[94]  *Id*. at 2.

[95]  *Id*.

[96]  Rec. Doc. 22-1.

[97]  Rec. Doc. 22-2.

[98]  Rec. Doc. 22-3.

affirmed [Plaintiff] was listed specifically as a contractor employed by. . . Pelstar."[99] Plaintiff contends that Fischer also reviewed the Daily Roster and stated that both he and Plaintiff were "listed under 'Contract' as opposed to 'W&T'" because they were not Defendant's employees at the time.[100] Plaintiff asserts that Fischer also identified the Handbook and testified that he received it first as a contractor, and then subsequently as an employee.[101] Plaintiff further asserts that the Handbook "clearly contemplates contractors, such as [Plaintiff and Fischer], separate and distinct from [Defendant's] employees."[102]

Plaintiff also argues that a review of the correspondence between Defendant's corporate representative and a Pelstar employee "exhibits Pelstar's responsibility and role in taking care of [Plaintiff] as a Pelstar employee subsequent to his injury aboard [MP 283]."[103] Plaintiff avers that Defendant referred to Plaintiff as "your guy" in the email exchange with Pelstar, and Pelstar confirmed that it had filed a workers compensation claim with its provider and was keeping in touch with Plaintiff.[104] Plaintiff contends that this exchange establishes that "Pelstar's responsibility and control of [Plaintiff] did not magically cease with [Plaintiff] boarding [MP 283]."[105] Finally, Plaintiff refutes Defendant's assertion that his testimony should not be

---

[99] Rec. Doc. 22 at 3 (citing Rec. Doc. 22-1).

[100] *Id.* (citing Rec. Doc. 22-2).

[101] *Id.*

[102] *Id.* (citing Rec. Doc. 22-3 at 1, 5, 18).

[103] *Id.* at 4 (citing Rec. Doc. 22-4).

[104] *Id.* (citing Rec. Doc. 22-4 at 2).

[105] *Id.*

considered because it is self-serving.[106] Plaintiff asserts that his testimony is "buttressed" by Fischer's testimony and "materially contests facts presented by [Defendant]."[107]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[108] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[109] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[110] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[111] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[112]

---

[106] *Id*. at 5.

[107] *Id* .

[108] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[109] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[110] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[111] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

[112] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[113] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[114] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[115] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[116] Rather, a factual dispute precludes a grant of summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[117] Further, a court "resolve[s] factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[118] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[119] Ultimately, summary judgment

---

[113] *Celotex*, 477 U.S. at 323.

[114] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[115] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

[116] *Little*, 37 F.3d at 1075.

[117] *Anderson*, 477 U.S. at 248.

[118] *Little*, 37 F.3d at 1075.

[119] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[120]

## IV. Analysis

The Parties agree that Plaintiff was injured on the Outer Continental Shelf. Section 1333(b) of the OCSLA incorporates and extends the benefits of the LHWCA to employees injured on fixed platforms on the Outer Continental Shelf.[121] Under the LHWCA, employees are prevented from bringing tort actions against their employers and their recovery is limited to certain statutorily prescribed compensation benefits.[122] Because a borrowing employer enjoys the same protection as a nominal employer, a "borrowed employee" (also referred to as "borrowed servant") is also barred from suing the borrowing employer for anything more than workers' compensation benefits.[123] Thus, if Plaintiff is found to be Defendant's "borrowed employee," then Plaintiff will be barred from suing Defendant in tort.

Although the parties dispute whether Plaintiff was a borrowed employee at the time of his injury, they agree that whether an employee is a borrowed employee is determined by applying the nine-factor test set forth by the Fifth Circuit in *Ruiz v. Shell Oil Co.*[124] The nine factors to consider are:

---

[120] *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993).

[121] 43 U.S.C. § 1333(b).

[122] *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1243–44 (5th Cir. 1988).

[123] *Id.*

[124] 413 F.2d 310 (5th Cir. 1969).

(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

(2) Whose work is being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee?[125]

No single factor, or combination of them, is determinative; although, in many cases, the Fifth Circuit has considered the first factor—control—to be the central factor.[126] The issue of borrowed employee status is a "'matter of law' for the district court to determine," but some cases involve factual disputes on the issue of borrowed employee status and require findings by a fact-finder.[127]

In *Brown v. Union Oil Co. of California*,[128] the Fifth Circuit reversed the district court's decision granting a directed verdict on the borrowed employee issue, finding factual issues

---

[125] *Id.*; *Melancon,* 834 F.2d at 1244.

[126] *See, e.g., Melancon*, 834 F.2d at 1245.

[127] *Id.* at 1244–45.

[128] 984 F.2d 674, 676 (5th Cir. 1993).

required another trial. The plaintiff was injured while working as a roustabout, cleaning drilling mud off one of the defendant's platforms.[129] The plaintiff was employed by a third-party, Gulf Island, who had contracted with the defendant to provide workers for this purpose.[130] The contract purported to prohibit the plaintiff's borrowed employee status.[131] However, the Fifth Circuit noted that such a provision "does not automatically prevent borrowed employee status from arising," and "the parties actions in carrying out a contract can impliedly modify or waive the express provision."[132] The Fifth Circuit recognized that a determination of "[w]hether the parties had an understanding that modified the contract may raise disputed factual issues."[133] Considering that "the contract provision between the two employers weigh[ed] against borrowed employee status, and the remaining factors [did] not overwhelmingly show that [the plaintiff] was a borrowed employee," the Fifth Circuit remanded the case to the district court for resolution of factual questions including who instructed the plaintiff on how and when to clean the platform and the agreement between the companies regarding borrowed employee status.[134]

In *Alday v. Patterson Truck Line, Inc.*, the Fifth Circuit found that a factual issue precluded summary judgment when a contractual provision regarding "borrowed employee" status conflicted

---

[129] *Id.*

[130] *Id.*

[131] *Id.* at 677.

[132] *Id.* at 677–78 (citing *Melancon*, 834 F.2d at 1245).

[133] *Id.* at 678.

[134] *Id.* at 679 (citing *West v. Kerr–McGee Corp.*, 765 F.2d 526, 531 (5th Cir. 1985)); *see also Melancon,* 834 F.2d at 1244 (holding that a contract provision that purports to prohibit borrowed employee status raises factual issues); *Alday v. Patterson Truck Lines, Inc.*, 750 F.2d 375, 378 (5th Cir. 1985) (reversing summary judgment based upon factual issues concerning contract).

with the conduct of the parties.[135] In that case, the Fifth Circuit found that "despite [a] factual showing supporting an inference of [the defendant's] supervisory control of [the plaintiff,]" the contractual provisions raised a factual issue as to the plaintiff's status as a borrowed employee.[136] In finding a factual dispute, the Fifth Circuit specifically highlighted language in the contract that "attempted to negate any borrowed employee relationship" between the parties.[137] The Fifth Circuit also noted that the contract contained a provision attempting to prevent unwritten modification of the contract, which stated that "[n]o waiver of any provision hereof by COMPANY, or Amendment hereto shall be effective unless it is in writing, and expressly refers to this Agreement."[138] Thus, the Fifth Circuit reversed the district court's order granting summary judgment and stated, "we are unable to say that no factual issue is raised by these contractual provisions, which 'negate' any intention on the part of the employers to establish a borrowed employee relationship."[139]

This Court has also addressed the issue of a borrowed employee at the summary judgment stage multiple times when dealing with similar contractual provisions. In *Robertson v. Blanchard Contractors, Inc.*, the defendant, Blanchard, moved for summary judgment claiming the plaintiff was a borrowed employee.[140] The plaintiff was working as a scaffold builder on a platform owned

---

[135] 750 F.2d 375 (5th Cir. 1985).

[136] *Id.* at 377.

[137] *Id.*

[138] *Id.* at 378.

[139] *Id.*; *see also Dugas v. Pelican Constr. Co., Inc.,* 481 F.2d 773, 778 (where a similar agreement was held to negate a borrowing employee relationship).

[140] 2012 WL 6202988, at *1 (E.D. La. Dec. 12, 2012).

by Hilcorp Energy.[141]  Hilcorp hired Blanchard, which had in turn subcontracted with Gulf South

Scaffolding for the construction of the scaffolding.[142]  Plaintiff was employed by Gulf South.[143]

In denying summary judgment, this Court found disputed issues of material fact existed:

> With respect to the question of whether he is a borrowed employee of Blanchard,
> Plaintiff has raised a genuine issue of material fact under three of the factors: (1)
> who had control over the employee; (2) whether there was a meeting of the minds
> between Blanchard and Gulf South; and (3) whether Gulf South terminated its
> relationship with Plaintiff. While none of the factors or any specific combination
> thereof is decisive, Fifth Circuit precedent has recognized the importance of the
> first two of these in the resolution of the borrowed employee question.[144]

In evaluating whether the borrowing employer controlled and directed Plaintiff's work, "a

careful distinction must be made between authoritative direction and control, and mere suggestion

as to details or the necessary co-operation, where the work furnished is part of a larger

undertaking."[145]

In this case, Defendant argues that its person-in-charge on MP 283 directed Plaintiff's

schedule and assignments and Pelstar had no involvement in Plaintiff's work.[146]  However,

Plaintiff argues that there is a genuine issue of material fact as to who controlled his work because

he determined his work each day, never attended any formal meetings, and did not receive any

instruction on his job as a mechanic.[147]  Plaintiff also points out that, although he cooperated with

---

[141] *Id.*

[142] *Id.*

[143] *Id.*

[144] *Id.* at 13.

[145] *Ruiz*, 413 F.2d at 313.

[146] Rec. Doc. 12-1 at 11–13.

[147] Rec. Doc. 16 at 8 (citing Rec. Doc. 16-5 at 62–63, 66, 81, 154–55, 159).

other employees for the "the overall function of the platform," he testified that he conducted his inspection rounds independently.[148] Plaintiff also contends that the Incident Report, the Daily Roster, and the Handbook demonstrate that Defendant considered Plaintiff an independent contractor and did not intend to modify the terms of the MSA.[149] Finally, Plaintiff asserts that the email exchange between a Pelstar employee and Defendant's corporate representative demonstrates that Pelstar maintained control over Plaintiff.[150]

As an initial matter, Plaintiff relies partly on his own deposition testimony to support the assertion that he was an independent contractor.[151] Defendant argues that this testimony is self-serving and should not be considered[152] Although Plaintiff cannot rely on "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law'" to defeat the motion, he can testify as to his own experience working on MP 283.[153] Plaintiff argues that his testimony regarding his experience on the MP 283 and the independent contractor provision in the MSA create a genuine issue of material fact as to Plaintiff's borrowed employee status.[154] The independent contractor provision in the MSA states that "[i]t is expressly understood and agreed that [Pelstar] is an independent contractor and that neither [Pelstar], nor [Pelstar's]

---

[148] *Id.* at 8–9 (citing Rec. Doc. 16-5 at 66–69).

[149] *See* Rec. Doc. 22 at 3–4.

[150] *Id.* at 5–6.

[151] *See* Rec. Doc. 16.

[152] Rec. Doc. 19 at 3.

[153] *Galindo,* 754 F.2d at 1216; *Little,* 37 F.3d at 1075.

[154] Rec. Doc. 39 at 4.

24

principals, partners, employees, or subcontractors are servants, agents or employees of [Defendant]."[155]

Based on this provision, it would seem that Pelstar maintained control over Plaintiff and that Plaintiff is not a borrowed employee of Defendant. However, Defendant argues that notwithstanding the language of the MSA, the actual relationship at MP 283 between Plaintiff and Defendant evidences an understanding, confirmed by Pelstar, that Defendant had the right to exercise authority and control over Plaintiff.[156]   Admittedly, courts have found that similar contract provisions do not prohibit a finding of borrowed servant status where the workplace reality suggests otherwise. For instance, in *Brown v. Union Oil Co. of California*, the Fifth Circuit faced similar provisions in a contract between lending and borrowing employers that purported to prohibit the plaintiff's borrowed employee status.[157]  The Fifth Circuit found that such contract provisions do not automatically prevent borrowed employee status from arising because the parties' actions in carrying out the contract can impliedly modify or waive the express provision.[158] "Whether the parties had an understanding that modified the contract may raise disputed factual issues."[159]  The Fifth Circuit held that conflicting evidence regarding whether the parties impliedly modified the contract raised a factual dispute that should be determined by a fact-finder.[160]

---

[155] Rec. Doc. 16-2 at 1.

[156] *See* Rec. Docs. 12-1, 19.

[157] *Brown v. Union Oil Co. of Cal.*, 984 F.2d 674, 677 (5th Cir. 1993).

[158] *Id*. at 677–78 (citing *Melancon*, 834 F.2d at 1245).

[159] *Id.* (citations omitted).

[160] *Id.* at 678.

The instant case is similar to *Alday v. Patterson Truck Line, Inc.*, where the Fifth Circuit found that a factual issue precluded summary judgment when a contractual provision regarding "borrowed employee" status conflicted with the conduct of the parties.[161] As in *Alday*, the MSA at issue here contains language that attempts to negate a "borrowed employee" relationship.[162] The express language of the MSA states that Pelstar is an independent contractor of Defendant, and "neither [Pelstar], nor [Pelstar's] principals, partners, employees, or subcontractors are servants, agents or employees of [Defendant]."[163]

Here, based on the contractual provision laid out above, the testimony and conduct highlighted by both parties, and Defendant's classification of Plaintiff as a contractor in the Incident Report and the Daily Roster, there is conflicting evidence regarding whether the parties' conduct modified the contract provision purporting to prohibit borrowed employee status.[164] Given the disputes of fact regarding the control the parties exercised and the force of the contract provision at issue, the Court will deny summary judgment at this time. Accordingly, the factual disputes will be resolved by the jury as factfinder at trial, and then the Court will determine Plaintiff's borrowed employee status as a matter of law.

Accordingly,

---

[161] *See* 702 F.2d 375 (5th Cir. 1985).

[162] *See id.* at 378.

[163] Rec. Doc. 16-2 at 1.

[164] Rec. Doc. 22-1; Rec. Doc. 22-2.

**IT IS HEREBY ORDERED** that Defendant's "Motion for Summary Judgment"[165] is

**DENIED**.

**NEW ORLEANS, LOUISIANA**, this 13th day of March, 2023.

NANNETTE JOLIVETTE BROWN
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[165] Rec. Doc. 12.

27