**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**MICAH RENE HEWITT**                                        **CIVIL ACTION**

**VERSUS**                                                           **NO. 22-461**

**W&T OFFSHORE, INC.**                                      **SECTION: "G"(1)**

## ORDER AND REASONS

In this litigation, Plaintiff Micah Rene Hewitt ("Hewitt") seeks damages from Defendant W&T Offshore, Inc. ("W&T") for injuries he suffered while working as a mechanic on W&T's oil platform.[1] Hewitt brings claims under the Outer Continental Shelf Lands Act (the "OCSLA")[2] and the Longshore & Harbor Workers' Compensation Act (the "LHWCA"),[3] asserting that W&T's negligence was the cause of his injuries.[4] Hewitt's employer, Pelstar Mechanical Services, LLC ("Pelstar") was a contractor to W&T and obtained from Starstone National Insurance Company ("Starstone") a Workers Compensation Insurance Policy ("Starstone Policy") that in part, covered LHWCA claims brought by Pelstar's employees.[5] Starstone filed a complaint of intervention, seeking from W&T full reimbursement of money it paid to Hewitt under the Starstone Policy and a set-off of any settlement between Hewitt and W&T.[6]

---

[1] Rec. Doc. 1.

[2] 43 U.S.C. § 1331.

[3] 33 U.S.C. § 901.

[4] Rec. Doc. 1 at 2, 4–6.

[5] *Id.* at 2–3; Rec. Doc. 10 at 3.

[6] Rec. Doc. 10 at 3.

1

Pending before the Court are cross-motions for summary judgment.[7] The parties seek summary judgment on the issues of whether the waiver of subrogation agreed to by Starstone in the Starstone Policy is enforceable and whether Starstone's intervention should be entirely dismissed.[8]  Having considered the motions, the memoranda in support and opposition, the record, and the applicable law, the Court grants Hewitt and W&T's motion and denies Starstone's motion because the waiver of subrogation in the Starstone Policy is enforceable and this Court is not required to allow Starstone to intervene in this litigation to protect its rights under the LHWCA.

## I. Background

### A.    Factual Background

In connection with its motion for summary judgment, the parties provide the following uncontested material facts.[9]  Hewitt filed this lawsuit after an alleged accident on May 8, 2021, when he was working as a mechanic for Pelstar on W&T's oil platform in Main Pass 283 ("MP 283").[10]  Hewitt worked on MP 283 as part of the Master Service Contract ("MSC") that Pelstar and W&T entered into on July 20, 2021.[11]  Section 5.1 of the MSC required Pelstar to indemnify and defend W&T for any and all claims related to personal or bodily injury asserted against W&T by Pelstar's employees.[12]  Shortly after being sued by Hewitt, W&T demanded that Pelstar defend

---

[7] Rec. Docs. 31, 33.

[8] See Rec. Docs. 31, 33, 34, 35, 40, 42.

[9] Rec. Docs. 31-2, 33-2.

[10] Rec. Doc. 31-2 at 1; Rec. Doc. 33-2 at 1.

[11] Rec. Doc. 31-2 at 1; Rec. Doc. 33-2 at 1.

[12] Rec. Doc. 31-2 at 2; Rec. Doc. 33-2 at 1.

and indemnify W&T for Hewitt's claims pursuant to Section 5.1 of the MSC.[13] Pelstar denied W&T's defense and indemnity demand because of the application of the Louisiana Oilfield Anti-Indemnity Act ("LOAIA") to the MSC.[14] W&T has not pursued a defense and indemnity claim against Pelstar since then.[15]

The MSC required Pelstar to carry workers compensation insurance with coverage against liabilities under the LHWCA.[16] Section 4.1 of the MSC provides in part that each insurance policy Pelstar obtains "will contain a waiver of subrogation rights against W&T Group."[17] Section 4.1 references Exhibit A, which in part provides that "[a]ll policies … shall be endorsed with a waiver of subrogation in favor of W&T Group, but only to the extent of the liabilities specifically assumed by [Pelstar] under this Contract."[18] Subsequently, Pelstar obtained the Starstone Policy, which contains the following Waiver of our Right to Recover from Others Endorsement:

> We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule. (This agreement applies only to the extent that you perform work under a written contract that requires you to obtain this agreement from us.)[19]

The Schedule in turn provides that "[w]here required by written contract, provided the contract is signed and dated prior to the date of loss to which this waiver applies."[20]

---

[13] Rec. Doc. 31-2 at 2; Rec. Doc. 33-2 at 2.

[14] Rec. Doc. 31-2 at 2; Rec. Doc. 33-2 at 2.

[15] Rec. Doc. 31-2 at 2; Rec. Doc. 33-2 at 2.

[16] Rec. Doc. 31-2 at 2–3; Rec. Doc. 33-2 at 2.

[17] Rec. Doc. 31-2 at 3 (citing Rec. Doc. 31-4 at 2); Rec. Doc. 33-2 at 2 (citing Rec. Doc. 33-5 at 2).

[18] Rec. Doc. 31-2 at 3 (citing Rec. Doc. 31-4 at 11); Rec. Doc. 33-2 at 3 (citing Rec. Doc. 33-5 at 11).

[19] Rec. Doc. 31-2 at 4 (citing Rec. Doc. 31-6 at 27); Rec. Doc. 33-2 at 3–4 (citing Rec. Doc. 33-7 at 28).

[20] Rec. Doc. 31-2 at 4 (citing Rec. Doc. 31-6 at 27); Rec. Doc. 33-2 at 3–4 (citing Rec. Doc. 33-7 at 28).

## B.    *Procedural Background*

Hewitt filed his complaint against W&T in this Court on February 22, 2022.[21]  Starstone then filed its complaint in intervention on October 26, 2022, alleging that "it is conventionally and legally subrogated to plaintiff's cause of action against Defendant, W&T Offshore, Inc. …"[22] Starstone seeks (1) "full reimbursement of all payments made in the current amount of $82,691.08" and (2) "a future credit in the amount of Plaintiff's net recovery for all payments made in the future, by preference and priority of any settlement or judgment with the defendants herein."[23] W&T filed an answer to Starstone's intervenor complaint on November 16, 2022.[24]  W&T then moved for summary judgment against Hewitt on January 18, 2023, arguing that Hewitt's claims are barred due to his status as a "borrowed employee."[25]  The Court denied W&T's motion for summary judgment on March 13, 2023.[26]

Hewitt and W&T filed a joint motion for summary judgment to dismiss Starstone's intervenor complaint on August 22, 2023.[27]  Starstone filed a cross motion for summary judgment on September 5, 2023, seeking a ruling that the contractual waiver of subrogation is inapplicable so that it may remain as a party in this litigation.[28]  Starstone then filed a response opposing Hewitt

---

[21] Rec. Doc. 1.

[22] Rec. Doc. 10 at 3.

[23] *Id.*

[24] Rec. Doc. 11.

[25] Rec. Doc. 12 at 1.

[26] Rec. Doc. 25.

[27] Rec. Doc. 31.

[28] Rec. Doc. 33.

and W&T's joint summary judgment motion on September 11, 2023.[29] Hewitt and W&T also filed a joint response opposing Starstone's cross motion for summary judgment on September 11, 2023.[30] Starstone then filed a reply on September 19, 2023.[31] Hewitt and W&T filed a joint reply on September 20, 2023.[32]

The main issue in these pending cross motions for summary judgment is whether Starstone waived subrogation in the Starstone Policy.[33] A related issue is whether Starstone's intervenor complaint should be dismissed entirely if the Court finds the waiver of subrogation enforceable or if Starstone should be allowed to remain as an intervenor.[34] Given that the cross motions raise the same arguments, the Court analyzes them as one.

## II. Parties' Arguments

### A. Hewitt and W&T's Arguments in Support of Summary Judgment

In their motion, Hewitt and W&T argue that Starstone's intervenor complaint should be dismissed because "Starstone unequivocally waived its right of subrogation by virtue of a waiver of subrogation endorsement in favor of W&T in the Starstone Policy."[35]

As an initial matter, Hewitt and W&T acknowledge that while this case arises under OCSLA, because Hewitt's alleged injury occurred on an offshore oil platform located on the Outer

---

[29] Rec. Doc. 34

[30] Rec. Doc. 35.

[31] Rec. Doc. 40.

[32] Rec. Doc. 42.

[33] Rec. Docs. 31, 33.

[34] Rec. Docs. 40, 42.

[35] Rec. Doc. 31 at 1.

Continental Shelf, Louisiana law applies to determine whether the waiver of subrogation in the Starstone Policy is enforceable.[36] Hewitt and W&T reason that this is because MP 283 where the accident occurred is adjacent to Louisiana.[37] Hewitt and W&T also acknowledge that the LOAIA is one such Louisiana law that affects the enforceability of subrogation waivers – it voids such waivers in certain circumstances.[38]

Hewitt and W&T then proceed to argue that the Starstone Policy contains an enforceable subrogation waiver that LOAIA does not void.[39] They reason that this is because in *Fontenot v. Chevron U.S.A., Inc.*, the Louisiana Supreme Court held that "such waivers are voided by LOAIA only when then the oil company seeks to enforce the waiver clause in conjunction with the oil company's enforcement of an indemnification clause against a contractor."[40] Hewitt and W&T also note that in *Fontenot*, the Louisiana Supreme Court conversely held that in situations where the oil company only seeks to enforce the waiver of subrogation and does not pursue an indemnity claim, "'there is no shifting of liability'" from the oil company to the contractor so the purpose of LOAIA is not frustrated.[41] Here, they note, W&T is not seeking to enforce a demand for indemnity against Pelstar, so LOAIA would not void the waiver of subrogation clause.[42]

Hewitt and W&T then point to several analogous cases where the Fifth Circuit and its

---

[36] Rec. Doc. 31-1 at 7.

[37] *Id.*

[38] *Id.* at 2 (citing to La. Rev. Stat. § 9:2780).

[39] *Id.* at 7–11.

[40] *Id.* at 8 (emphasis in original) (citing *Fontenot v. Chevron U.S.A., Inc.*, 95-1425, p.565 (La. 7/2/96); 676 So. 2d 557).

[41] *Id.* (citing *Fontenot*, 676 So. 2d at 565).

[42] *Id.* at 2 (emphasis in original).

district courts have applied *Fontenot* to find that a contractual subrogation waiver was enforceable.[43] Relying partly on these cases, Hewitt and W&T argue that "an oil company like W&T can properly invoke a waiver of subrogation clause against an intervening LHWCA insurer" because W&T here solely seeks to enforce the waiver of subrogation to defeat Starstone's intervention claim and is not also seeking to enforce the indemnity provision against Pelstar.[44]

Hewitt and W&T also argue that the limiting language found in the MSC, in which waivers of subrogation in favor of W&T are only required "to the extent of the liabilities specifically assumed by [Pelstar] under this Contract," does not erode the enforceability of the subrogation waiver in favor of W&T.[45] They point to *Delozier v. S2 Energy Operating, LLC* where the court rejected the insurer's arguments that the subrogation waiver was unenforceable because the oil company defendant did not seek indemnity from the contractor holding the insurance policy.[46] They note that the court reasoned that this logic was unpersuasive because then a waiver of subrogation would always be void under the language of the MSAs.[47] They also cite *Boudreaux v. Scott's Boat Rentals, LLC*, where the court considered similar limiting language regarding the

---

[43] *Id.* at 8–11 (citing *Hudson v. Forest Oil Corp.*, 372 F.3d 742 (5th Cir. 2004) (affirming the district court's dismissal of an intervention complaint based on a subrogation waiver in the master services contract and endorsed in the intervenor insurance company's insurance company because the oil company did not also pursue indemnification from its contractor); *Bickham v. ATP Oil & Gas Corp.*, No. 10-2761, 2011 WL 5878139, at *3, *7 (E.D. La. Nov. 23, 2011) (Fallon, J.) (holding that the insurance company intervenor waived subrogation in its insurance policy because the oil company defendant there pursued the subrogation waiver clause rather than the indemnity provision in the master services contract)).

[44] *Id.* at 11.

[45] *Id.* at 11–14.

[46] *Id.* at 12–13 (citing *Delozier v. S2 Energy Operating, LLC*, 500 F.Supp.3d 514, 525 (E.D. La. 2020) (Morgan, J.)).

[47] *Id.* at 13 (citing *Delozier*, 500 F.Supp.3d at 526).

waiver of subrogation and found the subrogation waiver to be enforceable.[48]

## B.    *Starstone's Arguments in Support of Summary Judgment*

Starstone argues that the subrogation waiver in the MSC only applies to liabilities Pelstar assumed under the MSC, but Pelstar did not indemnify W&T for Pelstar to have assumed any liability.[49] Starstone clarifies that it "is not arguing in this case that [LOAIA] invalidates the waiver of subrogation" but rather that "by the terms of the Contract, the waiver of subrogation does not apply because no indemnity was assumed."[50] Starstone seems to argue that the limiting language in the subrogation waiver provision of the MSC would be superfluous if it applied even if Pelstar did not assume indemnity, postulating that "[i]f W&T Offshore had wanted a more general waiver of subrogation that did not apply only if Pelstar assumed indemnity it could have dropped this contractual limitation."[51]

Starstone also notes that the cases Hewitt and W&T cite to, such as *Fontenot*, "do not thoroughly examine[] contracts where the parties to the contract chose to specifically tie the waiver of subrogation to the assumption of the contractual defense, indemnity, and additional insured provisions."[52] Starstone asserts that "[c]ourts which have examined this language have ruled that limiting a waiver of subrogation to liabilities assumed under the Contract means that the waiver of

---

[48] *Id.* (citing *Delozier*, 500 F.Supp.3d at 526 (citing *Boudreaux v. Scott's Boat Rentals, LLC*, 184 F.Supp.3d 343, 347 (E.D. La. 2016) (Barbier, J.)).

[49] Rec. Doc. 33-3 at 1.

[50] *Id.* at 7.

[51] *Id.*

[52] *Id.* at 3–4.

subrogation is invalid if there is no corresponding defense and indemnity obligation assumed."[53]

Starstone points to *Becker v. Tidewater, Inc.*, where the "Fifth Circuit examined whether similar contractual language limiting the risk assumed under the contract applied to invalidate an additional insured provision."[54] Starstone notes that the contract there stated that Tidewater's liability policy "shall include CHARTERER in its capacity as time charterer of the vessel, as an additional insured, but only with respect to the risks assumed by OWNER [Tidewater] in this Charter."[55] Starstone then notes that the "Fifth Circuit determined Tidewater did not assume the risks of injury to the charterer's employees and did not owe indemnity, and therefore did not owe a duty to name the charterer as an additional insured."[56]

Starstone then points to *International Marine, LLC v. Atlantic Specialty Insurance Company*, where a district court followed *Becker* and the Fifth Circuit affirmed, finding that the reference to "'risks and liabilities assumed'" in the master services contract referred to the indemnity provisions of the contract.[57] Starstone also points to *Tennessee Gas Pipeline v. Rowan Companies*, where the court interpreted a subrogation waiver clause with qualifying language about the liabilities assumed by each party to mean that "'all of the agreements to waive subrogation … are tied to the liability assumed under the Contract.'"[58]

---

[53] *Id.* at 4.

[54] *Id.* (citing *Becker v. Tidewater, Inc.*, 586 F.3d 358 (5th Cir. 2009)).

[55] *Id.* (citing *Becker*, 586 F.3d at 370).

[56] *Id.* (citing *Becker*, 586 F.3d at 371).

[57] *Id.* at 4–5 (citing *Int'l Marine, LLC v. Atl. Specialty Ins. Co.*, 761 Fed. Appx. 269, 273–74 (5th Cir. 2019)).

[58] *Id.* at 5 (citing *Tenn. Gas Pipeline v. Rowan Co.*, No. 94-3863, 1996 WL 547421, at *4 (E.D. La. Sept. 26, 1996) (Duval, J.)).

Finally, Starstone points to a Texas state appellate case, *New Hampshire Insurance Company v. Mora*, where the court "followed several other Texas courts in determining if the contract limits waivers of subrogation to 'liabilities assumed' by the insured, the court must consider the indemnity provisions of the contract to determine which liabilities the insured assumed."[59]

## C.     *Hewitt and W&T's Response to Starstone's Motion*

In response to Starstone's motion, Hewitt and W&T first argue that the subrogation waiver in the MSC is applicable because "Pelstar unequivocally agreed to assume responsibility for any and all claims arising out of personal or bodily injury that might be asserted against W&T by Pelstar's direct employees" in Sections 1.1 and 5.1 of the MSC.[60]

In response to the cases Starstone cites, Hewitt and W&T contend that they are distinguishable from the case here because those "cases address the situation where a party contractually agreed to defend and indemnify the counterparty for certain liabilities and was required under the contract to procure insurance naming the counterparty as an additional insured to the extent of its defense and indemnity obligations assumed under the contract."[61]

Hewitt and W&T contend that *Becker v. Tidewater* is distinguishable because the relevant contract there contained a reciprocal indemnity clause where Tidewater agreed to indemnify Baker for any claims Tidewater's employees brought against Baker and Baker agreed to indemnify

---

[59] *Id.* at 5–6 (citing *N.H. Ins. Co. v. Mora*, 500 S.W.3d 132 (Tex. App. 2016)).

[60] Rec. Doc. 35 at 3.

[61] *Id.* at 4.

Tidewater for any claims Baker's employees brought against Tidewater.[62] Hewitt and W&T further contend then, that it is logical that the Fifth Circuit held that Baker is not an "additional assured" to Tidewater's insurance when Baker's employee brought a claim against both Baker and Tidewater because under the parties' reciprocal indemnity agreement, Baker assumed the risk of injury to Baker's employees, and not Tidewater.[63]

Hewitt and W&T also contend that *International Marine* is similarly distinguishable.[64] They reason that in *International Marine*, Sea Eagle was required to obtain insurance to "'protect [Tesla] from third party claims arising out of or connected with the performance of Service hereunder,'" but the third-party claim brought against Tesla was not related to the performance of service in the contract.[65] Therefore, Hewitt and W&T argue "the third-party claim at issue in *Int'l Marine* was simply not a risk or liability that had been assumed under the contract by Sea Eagle …"[66]

Hewitt and W&T also argue that while *Mora* is inapplicable because it concerns Texas law, it actually supports their position.[67] They reason that this is because the court stated that "[i]f the indemnity provisions require the insured to indemnify another party for the accident … then the insured has 'assumed liability for the accident'" such that "the waiver-of-subrogation provision

---

[62] *Id.* at 4–5 (citing *Baker*, 586 F.3d at 371).

[63] *Id.* at 5 (citing *Baker*, 586 F.3d at 371).

[64] *Id.* (citing *Int'l Marine*, 761 Fed. Appx. 269).

[65] *Id.* (citing *Int'l Marine,* 761 Fed. Appx. at 272–73).

[66] *Id.*

[67] *Id.* (citing *Mora,* 500 S.W.3d at 132).

in the insurance policy is 'required by contract …'"[68]

Second, Hewitt and W&T argue that even if LOAIA applied to void the subrogation waiver, it could still pursue indemnification of Pelstar under *Meloy v. Conoco, Inc.*[69] They reason that this is because *Meloy* "only prohibits agreements to indemnify the indemnitee for defense costs where there is negligence or fault on the part of the indemnitee" … but "does not prohibit[] agreements to assume the indemnitee's costs to defend a meritless suit."[70] W&T postulates then, that if it is found to be not at fault for Hewitt's injuries, it can seek defense costs from Pelstar.[71]

## D.   *Starstone's Reply*

In its reply, Starstone argues that even if the Court finds that the waiver of subrogation waiver is valid, the Court should not completely dismiss Starstone's intervention complaint.[72] Starstone reasons it has "independent rights under the LHWCA," such as written consent for settlement and a right of future credit for the net amount received by the employee in a third-party action, as the workers compensation insurance company here.[73]

## E.   *Hewitt and W&T's Reply*

In its reply, Hewitt and W&T argue that Starstone's intervention complaint should be dismissed in its entirety because the Court lacks jurisdiction to decide Hewitt's right to

---

[68] *Id.* (citing *Mora*, 500 S.W.3d at 132).

[69] *Id.* at 7–8 (citing *Meloy v. Conoco, Inc.*, 504 So. 2d 833 (La. 1987)).

[70] *Id.* at 8 (citing *Meloy*, 504 So. 2d at 839).

[71] *Id.*

[72] Rec. Doc. 40 at 1.

[73] *Id.* (citations omitted).

compensation from Starstone and Pelstar under the LHWCA.[74] Hewitt and W&T reason that Hewitt is receiving LHWCA benefits in an administrative proceeding before the U.S. Department of Labor's Office of Workers' Compensation Program, so Starstone's rights under the LHWCA will be determined in that administrative proceeding rather than here in this case.[75] Hewitt and W&T also argue that while some district court cases have allowed a LHWCA insurance carrier to remain as an intervenor even when that carrier has waived its subrogation rights,[76] other district court cases have "held that where a LHWCA carrier has waived rights of subrogation a full dismissal with prejudice of the intervention complaint is proper."[77] Hewitt and W&T contend that the cases where the intervention complaint was fully dismissed are better reasoned because "statutory rights that Starstone seeks to assert and protect under the LHWCA will not be determined by this Court" but rather in the Department of Labor's administrative proceeding.[78]

Hewitt and W&T next argue in the alternative that if Starstone remains as an intervenor, it "should be ordered to amend its Complaint-in-Intervention to confirm that its rights of intervention are limited to protecting its statutory rights under the LHWCA as they relate to the instant third-party tort lawsuit."[79] They note that *Foret*, which Starstone cites, supports that such an amendment

---

[74] Rec. Doc. 42 at 4.

[75] *Id.* (citing 33 U.S.C. §§ 933(f) and (g)).

[76] *Id.* (citing *Bickham*, 2011 WL 5878139, at *5; *Foret v. Transocean Offshore (USA), Inc.*, No. 9-4567, 2011 WL 4443527, at *2 (E.D. La. Sept. 23, 2011) (Lemelle, J.)).

[77] *Id.* (citing *Raynes v. McMoRan Expl. Co.*, No. 8-5018, 2011 WL 4403987, at *4 (E.D. La. Sept. 20, 2011) (Africk, J.); *Hudson*, 372 F.3d at 742).

[78] *Id.* at 4–5.

[79] *Id.* at 5.

is appropriate.[80]

### III. Legal Standard on Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[81] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[82] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[83] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[84] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[85]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes

---

[80] *Id.* (citing *Foret*, 2011 WL 4443527, at *2).

[81] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[82] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[83] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[84] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[85] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

demonstrate the absence of a genuine issue of material fact.[86] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[87] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[88] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[89] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[90]

## IV. Analysis

Hewitt and W&T move for summary judgment, arguing that Starstone's intervenor complaint should be dismissed because the waiver of subrogation in favor of W&T in the MSC and the Starstone Policy is enforceable.[91] Starstone also moves for summary judgment, arguing that the Court should issue a declaratory judgment that the waiver of subrogation in the MSC is

---

[86] *Celotex*, 477 U.S. at 323.

[87] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[88] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

[89] *Little*, 37 F.3d at 1075.

[90] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[91] Rec. Docs. 31, 35.

invalid because W&T did not indemnify Pelstar for Pelstar to have assumed liability for Hewitt's injuries under the MSC.[92]

## A.    *Applicable Law*

As an initial matter, the Court must determine the laws applicable to the issues the parties have raised in their motions. Hewitt and W&T argue that while this case arises under OCSLA, Louisiana law is applied to the extent that it is consistent with OCSLA.[93] While Starstone did not specifically brief which law applies to the issues here, it points to Fifth Circuit cases applying federal maritime law and Louisiana law and a Texas state appellate case applying Texas law.[94] Starstone also notes that "Louisiana state courts have not closely reviewed the same issue …"[95]

The Fifth Circuit has held that "for state law to apply as surrogate federal law" pursuant to OCSLA, "three conditions must be met:" (1) "[t]he controversy must arise on a situs covered by OCSLA (i.e. the subsoil seabed, or artificial structures permanently or temporarily attached thereto" (2) "[f]ederal maritime law must not apply of its own force;" and (3) "[t]he state law must not be inconsistent with federal law."[96] Here, Hewitt alleges that he was injured while working on Main Pass 283, a production platform attached to the seabed of the Gulf of Mexico, on the Outer

---

[92] Rec. Doc. 33, 34.

[93] Rec. Doc. 31-1 at 7 (citing 43 U.S.C. § 1333(a)(2)(A)).

[94] Rec. Doc. 33-3 at 1–6. *Becker*, 586 F.3d at 369, provides that "[a] maritime contract containing an indemnity agreement, whether governed by federal maritime or Louisiana law, should be read as a whole and its words given their plain meaning unless the provision is ambiguous." *Int'l Marine*, 761 Fed. Appx. at 272, applied Louisiana law to interpret a marine insurance contract. *Mora*, 500 S.W.3d at 132, reviewed Texas state law.

[95] *Id.* at 5.

[96] *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 782–83 (5th Cir. 2009) (en banc) (internal citation omitted).

16

Continental Shelf of the United States, off the coast of Louisiana.[97]  The parties do not dispute that

the fixed offshore platform is a situs covered by OCSLA.[98]   Further, it is also undisputed that the

facts at issue here do not implicate federal maritime law.[99]  In addition, the parties do not argue

that Louisiana law is inconsistent with federal law, and the Court finds no inconsistencies that

would preclude the application of Louisiana law here. Therefore, OSCLA applies to this dispute,

and the applicable state law is that of Louisiana, because Louisiana is the state adjacent to where

Plaintiff was injured on the platform.[100]

The LHWCA is also applicable here, governing workers' compensation rights and

obligations.[101]  The LHWCA requires the employer to pay compensation to its injured employees

irrespective of fault.[102]  "Where the employee is insured and the insurance carrier has assumed the

payment of the compensation, the insurance carrier shall be subrogated to all the rights of the

employer [under the LHWCA]."[103]

## B.      The Subrogation Waiver

Louisiana law provides insurance carriers a statutory right to recover workers'

compensation payments made to an injured worker from any third party that caused the worker's

---

[97] Rec. Doc. 1 at 2–8.

[98] *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352 (1969) (holding that OCSLA applied in an action arising from deaths occurring on fixed offshore drilling structures).

[99] *See id.* at 359 ("Drilling platforms are not within admiralty jurisdiction.") (citation omitted).

[100] *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 481 (1981).

[101] *See* 42 U.S.C. § 1333(b).

[102] *See id.* at § 904.

[103] *Id.* at § 933.

injury.[104] An insurance carrier's statutory right to reimbursement of compensation benefits paid to an injured worker may be waived by the insurance carrier, if it chooses to do so through a waiver of subrogation in the insurance policy or by a separate agreement.[105] The Louisiana First Circuit Court of Appeal and the U.S. Court of Appeals for the Fifth Circuit have both found an insurance carrier's contractual waiver of subrogation to be valid.[106]

In the oil and gas industry, waivers of subrogation are "designed to relieve oil companies of the obligation to reimburse contractors or insurance companies for workers' compensation payments."[107] To protect insurance companies and contractors from the potentially unfair effects of subrogation waivers in favor of oil companies, the Louisiana legislature enacted LOAIA to alleviate the "inequity … foisted on certain contractors and their employees by the defense or indemnity provisions … contained in some [oil and gas] agreements."[108] The LOAIA "null[s] and void[s]" any "waivers of subrogation … or any other form of insurance protection which would frustrate or circumvent the prohibitions of [La. Rev. Stat. Section 2780]" found in oil and gas contracts.[109] In *Fontenot*, the Louisiana Supreme Court clarified that LOAIA voids a waiver of

---

[104] La. Rev. Stat. § 23:1101.

[105] *Delozier*, 500 F.Supp.3d at 521 (citing H. Alton Johnson, WORKERS' COMPENSATION AND PRACTICE § 370, in 14 La. Civ. L. Treatise 17 (5th ed.)).

[106] *Sandbom v. BASF Wyandotte, Corp.*, 95-035, p. 363 (La. App. 1 Cir. 4/30/96); 674 So. 2d 349 ("An employer may contractually waiver the employer's right to reimbursement of compensation benefits paid an employee. Additionally, the insurance carrier may waive such rights in its policy of insurance with the employer, or by separate agreement with the third party."); *Capps v. Humble Oil & Refining Co.*, 536 F.2d 80, 81 (5th Cir. 1976) (rejecting insurance carrier's argument that it had an independent statutory right to subrogation and holding that the insurance "carrier waived any claim to the settlement between the third party and the employee").

[107] *Delozier*, 500 F.Supp.3d at 524 (citing *Fontenot*, 676 So. 2d at 564; *Hudson*, 372 F.3d at 745–46).

[108] La. Rev. Stat. § 9:2780(A).

[109] *Id*. at § 9:2780(G).

subrogation only when the oil company pursues both the waiver of subrogation and indemnification.[110]

The parties dispute whether the qualifying language of "only to the extent of the liabilities specifically assumed by [Pelstar] under this Contract" renders the subrogation waiver inapplicable. Starstone argues that Pelstar as the contractor would only have assumed a liability to trigger the subrogation waiver if Pelstar had indemnified W&T.[111] Hewitt and W&T disagree, arguing that Pelstar need not indemnify W&T for Pelstar to have assumed liability because Pelstar "unequivocally agreed to assume responsibility for any and all claims arising out of personal or bodily injury that might be asserted against W&T by Pelstar's employees" in Sections 1.1 and 5.1 of the MSC.[112]

Here, the subrogation waiver is valid despite the qualifying language in the MSC. The MSC provides that Pelstar "shall release, indemnify, protect, defend, and hold W&T Group harmless from and against any and all claims in respect of personal or bodily injury to, sickness, disease or death of … and member of contractor group, in any way, directly or indirectly, arising out of, connected with, incident to, or resulting from or relating to the performance of the contract …"[113] The MSC's definition of "claims" is absolute, as it provides that "'claims' shall mean and any all claims, liabilities, costs and expenses … and causes of action of whatsoever nature or character."[114] This language in which Pelstar must "release … and hold W&T Group harmless from any and all

---

[110] *Fontenot*, 676 So. 2d at 565.

[111] Rec. Doc. 33-3 at 3–8.

[112] Rec. Doc. 35 at 3 (citing Rec. Doc. 31-4).

[113] Rec. Doc. 31-4 at 3.

[114] *Id.* at 1.

claims" that Pelstar's employees may bring and that claims are "causes of action of whatsoever nature or character" is the extent of the liabilities Pelstar has assumed in the MSC. While this broad language is contained in the "indemnity" section of the MSC, W&T has chosen to utilize the waiver of subrogation rather than pursue indemnification so that its actions do not run afoul of the LOAIA, as the Louisiana Supreme Court instructed in *Fontenot*.[115]

Courts interpreting master service contracts between oil companies and contractors containing similar limiting language have found that subrogation waivers in the insurance policy are enforceable despite that limiting language. In *Boudreaux*, the Master Service Agreement between Black Elk, an oil company, and its contractor, Wood Group, stated in part that "all insurance policies of CONTRACTOR … shall be endorsed to waive subrogation against BLACK ELK GROUP to the extent of the liabilities and indemnity obligations assumed by CONTACTOR under this Agreement."[116] A judge in the Eastern District of Louisiana first found that Wood Group, the contractor, "waived the right of subrogation with respect to workers' compensation payments as to … Black Elk [the oil company]."[117] Based on this language in the Master Service Agreement, the court then concluded that "Wood Group's insurer, ACE American Insurance Company, agreed to waive its right of subrogation against 'any person or organization against whom [Wood Group] ha[d] agreed to waive [its] rights of recovery in a written contract, provided such contract was executed prior to the date of loss.'"[118] Having found that the subrogation waiver

---

[115] *See Fontenot*, 676 So. 2d at 565.

[116] *Boudreaux*, 184 F.Supp.3d at 346–47.

[117] *Id.* at 347.

[118] *Id.*

was valid, the court dismissed Wood Group's intervention.[119]

Similarly, a judge in the Western District of Louisiana has come to the same conclusion regarding the limiting liability language in a Master Service Contract and whether it affects the enforceability of the subrogation waiver. In *Morgan v. Hercules Drilling Co.*, the Master Service Agreement provided in part that the "Contractor's obligation to have its insurance endorsed to include a waiver of subrogation in favor of the Owner Indemnified parties and to name the owner Indemnified Parties as additional insureds are applicable only to the extent of the liabilities and obligations assumed by CONTRACTOR under this agreement."[120] The insurance carrier, Liberty Mutual, acknowledged that the insurance policy contains a waiver of subrogation but nevertheless argued that it had an independent statutory right under Louisiana law to recover the money it paid out to an injured worker under a LHWCA workers compensation policy.[121] The court found that "Liberty Mutual's policy contains an express waiver of its right to reimbursement. This waiver is applicable and has not been limited in any way."[122]

Furthermore, Starstone's interpretation of the limiting liability language in the MSC would produce absurd results. Requiring Pelstar to indemnify W&T for the subrogation waiver to apply would be perpetually defeating, as Pelstar's indemnification of W&T would void the subrogation waiver under LOAIA. This is precisely what the court concluded in *Delozier*.[123] In *Delozier*, the

---

[119] *Id.*

[120] *Morgan v. Hercules Drilling Co., LLC*, No. 9-2091, 2011 WL 3739053, at *2 (W.D. La. Aug. 22, 2011) (Doherty, J.).

[121] *Id.* at *5 (citing La. Rev. Stat. § 23:1101(B)).

[122] *Id.* at *6 (citing *Sandbom,* 674 So.2d 349).

[123] *Delozier*, 500 F.Supp.3d at 526.

Master Service Agreement stated in part that the waiver of subrogation is "'limited to the extent of Contractor's indemnity obligations assumed herein.'"[124]  The insurance carrier argued that "the waiver of subrogation is enforceable only when [the contractors] are obligated to indemnify [the oil company], but that the jurisprudence prohibits enforcement of the waiver of subrogation when used in conjunction with the indemnity clause."[125]  Citing to *Boudreaux*, another judge in the Eastern District of Louisiana rejected the insurance company's argument, reasoning that by this logic, the waiver of subrogation would always be void under the language of the MSAs.[126] Therefore, the court concluded that the MSA did not narrow the application of the waiver of subrogation.[127]

The cases Starstone cites are inapposite, as neither *Becker* or *International Marine* address the relationship between subrogation waivers in insurance contracts and LOAIA. In addition, *Mora*, which applies Texas state law, is not binding authority. Starstone has not otherwise identified authority providing that a contractor must indemnify the oil company for a waiver of subrogation provision to apply. Therefore, the Court will follow *Fontenot*, *Hudson*, *Delozier*, and other cases discussed above that are more factually and legally analogous to the instant care here to find that the waiver of subrogation in favor of W&T is valid.

---

[124] *Id.* at 525.

[125] *Id.* at 525–26.

[126] *Id.* at 526.

[127] *Id.* at 525–26.

### C.   *Starstone's rights under the LHWCA and its Intervention here*

Starstone initially moved for summary judgment for the Court to find that its intervention complaint should be retained in full, but argues in the alternative that "complete dismissal is inappropriate because [Starstone] possesses independent rights under the LHWCA, particularly written consent for settlement and a future credit for the net amount received by the employee in a third-party action."[128] Hewitt and W&T oppose, arguing that "(1) Starstone's right under 33 U.S.C. § 933(f) to a set-off or Starstone's right under 33 U.S.C. § 933(g) to approve a settlement between W&T and Hewitt" will not be determined by this Court but rather in an administrative proceeding pending before the Department of Labor.[129] Hewitt and W&T argue in the alternative that Starstone should be required to amend its intervention complaint to specify that it seeks to protect its rights under 33 U.SC. Sections 933(f) and (g).[130]

Although Starstone has statutory rights to approve a settlement and to a set-off under the LHWCA, Starstone has not identified any authority providing that it has the right to intervene in this litigation between Hewitt and W&T to protect those rights. *Petroleum Helicopters, Inc. v. Collier,* which Starstone cites, does not mandate courts to allow an insurance company to intervene to protect its LHWCA rights in a lawsuit between a worker and a third-party tortfeasor.[131] Rather, the contractor employer in *Petroleum Helicopters* asserted its rights under the LHWCA to approve the settlement between the worker and the third party tortfeasor as a "complete defense to any

---

[128] Rec. Doc. 40 at 1 (citations omitted).

[129] Rec. Doc. 42 at 4.

[130] *Id.* at 5.

[131] *Petroleum Helicopters, Inc. v. Collier*, 784 F.2d 644 (5th Cir. 1986).

liability for future compensation" in administrative proceedings before the Department of Labor.[132] After the Administrative Law Judge rejected the contractor employer's argument that it was not liable for any future payments to the worker because its Section 933(g) settlement approval rights under the LHWCA and the Benefits Review Board of the Department of Labor affirmed, the contractor employer sought judicial review of that final decision and order of the Benefits Review Board.[133] The Fifth Circuit reviewed an administrative agency's final decision and order, not a district court's order in the worker's lawsuit against the third party tortfeasor.[134] This suggests that administrative proceedings before the Department of Labor is the appropriate proceeding for Starstone to protect its rights under the LHWCA.[135] Because the Court is not required to allow Starstone to intervene in this lawsuit between a worker and a third party tortfeasor to protect its LHWCA rights, and because Starstone may protect its rights under LHWCA in administrative proceedings before the Department of Labor, Starstone's intervenor complaint must be fully dismissed.[136]

## V. Conclusion

Since there is no genuine issue of material fact in dispute, and the only issues in dispute are questions of law regarding whether Starstone's waiver of subrogation is valid and whether Starstone may remain in this litigation to protect its rights under LHWCA, summary judgment is

---

[132] *Id.* at 645–46.

[133] *Id.* at 644–46.

[134] *See id.*

[135] *See Jackson v. Land & Offshore Servs., Inc.*, 855 F.2d 244, 245 (5th Cir. 1988) (holding that it was proper for the Department of Labor to deny an application for workers compensation under the LHWCA because the worker failed to obtain the prior approval of his employer to the settlement with the third party tortfeasor).

[136] *Petroleum Helicopters,* 784 F.2d at 645–46.

appropriate. As discussed above, the Court finds that the waiver of subrogation is valid and the Court is not required to allow Starstone to intervene in this litigation to protect its LHWCA rights.

Accordingly,

**IT IS HEREBY ORDERED** that Hewitt and W&T's Joint Motion for Summary Judgment[137] is **GRANTED** and Starstone's claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Starstone's Motion for Summary Judgment[138] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this __1st__ day of December, 2023.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[137] Rec. Doc. 31

[138] Rec. Doc. 33.